618    APPELLATE COURTS OF ILLINOIS.

VOL. 94.] Western Union Cold Storage Co. v. Winona Produce Co.

---

## Western Union Cold Storage Co. v. Winona Produce Co.

1. FACTORS—*Duty to Sell Property to Responsible Parties.*—It is the duty of a factor to exercise reasonable care and prudence in selling property to responsible parties, and if he neglects his duty in this respect, he will be liable for losses which result.

2. SAME—*Duty in Ascertaining the Ability of Purchasers to Pay.*—A factor will be held to all reasonable diligence in learning the ability of persons to pay for property purchased, and any inattention or carelessness in this respect will render him liable for losses sustained; and while he will not be held as a guarantor of his sales, he will be held to a high degree of vigilance in ascertaining the ability of his purchasers to pay.

3. CUSTOMS—*Not to Violate Rules of Law.*—The law recognizes no validity in any custom which violates its own rules, and it is not error to exclude evidence which, if admitted, would tend to relieve a party from a just legal obligation.

4. FORMER DECISIONS—*Followed.*—The court follows its former decision in this case, reported in 84 Ill. App. 678.

Assumpsit.—Common counts. Appeal from the Circuit Court of Cook County: the Hon. CHARLES G. NEELY, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1900. Affirmed. Opinion filed May 10, 1901.

DEFREES, BRACE & RITTER, attorneys for appellant.

CHURCH, McMURDY & SHERMAN, attorneys for appellee.

MR. PRESIDING JUSTICE SHEPARD delivered the opinion of the court.

This case was here once before, and was then remanded for another trial, because, as we conceived, of error in the former judgment. The facts of the case appear in the report of our former decision (84 Ill. App. 678) and need not be repeated. We then held, substantially, that the damages appellant was liable for were such only as appellee sustained because of appellant's failure, until its letter of February 7th, to inform appellee of the true facts about the reported sale of the eggs to Foster on January 7th, and that appellant was not liable for the loss sustained by appellee, from a falling market, which a reasonably prompt attention to its own interests, subsequent to getting the letter of February 7th, would have prevented. We are still of opinion that our conclusion in such respects was right.

At the last trial all the evidence on the former trial was introduced, and some additional evidence was received relating principally to the market price of eggs. February 10, 1896 (the 9th being Sunday), appears to be conceded by both sides as the reasonable date upon which appellee's answer to appellant's letter of February 7th should reach appellant. It was as of that date that the evidence was considered by the court for the purpose of fixing the damages—measured by the difference between eggs at the price on that day and the amount which would have been realized if the sale to Foster, reported January 7th, had been consummated.

It is substantially agreed that if the trial court correctly found the price of eggs on February 10th to be nine cents per dozen, and that appellee was entitled to two credits of $23.10 for interest and $120 for storage, its decision and judgment were in accordance with the holding of this court on the former appeal.

In view of our former decision, *supra*, we consider the

620    Appellate Courts of Illinois.

Vol. 94.] Western Union Cold Storage Co. v. Winona Produce Co.

only questions open to us at this time, as being those just mentioned, adding thereto the point pressed by appellant that the trial court erred in excluding evidence of a custom in the trade not to disclose the name of the purchaser.

Considering this last proposition first, we think there was no error in regard to it.   We held in the former appeal that appellant's suppression of the fact that the reported purchaser was an irresponsible person, and one known so to be to appellee, whose name, if disclosed, would have prevented the acceptance by the appellee of the reported sale to him, was material; and, under the circumstances, was information that appellee was fairly and fully entitled to. And upon authorities there cited, we held it was the duty of appellant to have notified the appellee of any terms of the reported sale which might imperil the fulfillment of the contract of sale.

The law recognizes no validity in any custom which violates its own rules, and it was not error to exclude evidence which, if admitted, would have tended to relieve the appellant from a just legal obligation.

The trial court, acting upon what it believed to be the proper construction of the opinion of this court on the former appeal, fixed upon February 10th as the proper and reasonable date from which to measure appellee's damages —it being the next business day after appellee's letter to appellant, dated February 7th, was received.

The finding of the trial court in that respect was as follows :

" That by ordinary course of mail between Chicago and Winona, had the plaintiff, upon the receipt of defendant's letter of February 7, 1896, replied to same with reasonable promptitude, giving the defendant a new order for the sale of the eggs in question, such reply would have reached defendant during business hours February 10, 1896 (February 9th being Sunday)."

Considering the quantity of eggs involved, the question as of what date the appellee was put upon such notice as required it to act in the premises, and as well, also, the market value of eggs on that date, is of considerable impor-

tance to the parties.    After January 7th—the date of the reported sale at 14¼ cents—the market declined about one-half.

On the one hand, appellant contends that if appellee had acted promptly after first being informed that the eggs had not been removed from the warehouse and paid for, the loss would have been inconsiderable, and, on the other hand, appellee insists that the price of 7½ cents at which the bank sold the eggs, on February 21st, should have been adopted by the court as the market value on February 10th, because of the evidence of the average daily price shown from February 3rd to February 22d.    The trial court's finding was that the fair market price of the eggs on February 10th was nine cents per dozen.

In view of what we held on the former appeal we think that the trial court fixed upon February 10th as the proper date when appellee was first bound to act upon a resale of the eggs.    It was not until the receipt of appellee's letter of February 7th that appellee was so informed of the real situation of the reported sale, as to require action by it, and as held by the trial court, the 10th was the date as to which its action should have become effective.

There is some difficulty in determining from the evidence what the exact market price of eggs was on that day, but upon a careful inspection and consideration of the evidence in respect thereof, our opinion is that the trial court fairly and justifiably found it was nine cents per dozen for eggs of the class in controversy.

The items of interest and storage were, in our opinion, properly credited by appellee.    They covered the one month, substantially, between the date of the reported sale to Foster on February 10th.    If appellant had done its duty in the matter, appellee would not have incurred either of such charges.    By the express terms of the sale to Foster, reported on January 7th, it was stated that the storage charges after January 8th, were assumed by Foster.    If the purchaser had taken and paid for the eggs, both storage and interest would have ceased.    His failure to do so should not

be visited upon appellee to the advantage of appellant, by whose neglect another sale was prevented.

Some attempt has been made in the briefs to induce us to re-open the case upon points decided upon the former appeal, but we must decline to do so.

The judgment as rendered by the Circuit Court is right, as we believe, and it will be affirmed.